Chief Justice Bibb
delivered tbe Opinion of the Court.
On the 19th February, 1827, a paper purporting to be .the last will and testament of Alsey Howard, then recently dead, was produced in the county court of Jessamine, and offered for probate, by Mrs. Sarah Howard, the executrix and sole devisee, named therein. The probate was contested by one of the heirs at law, and finally refused; from which .the executrix has appealed.
This paper hears date on the 25th July, 1807; is attested fey Joseph Crockett, Samuel Howard, and Elizabeth Howard; the will was written by Col. Joseph Crockett, the attesting witness, as dictated by the testatrix; her name was written thereto by Col. Crockett, in her presence; she signed the will by making her mark, and all the subscribing witnesses agree, that it was signed by the testatrix in their presence. That they saw her sign, that they attested, and that the paper offered for probate is the same so signed, and so attested by them, all the witnesses depose.
But it is contested, on behalf of the heirs at law, upon two grounds: 1st. That the paper was not attested by two of the witnesses, (as required by the statute,) subscribing their names in her presence. 2d. That the said Alsey was not of sound mind.
1st. As to the attestation. Col. Crockett, whom all agree is a man of integrity, of irreproachable character,, above all suspicion, deposes that he *200 wi’ote the will by her dictation; as to the bequest and devise to her mother of the whole estate, real and personal; that he signed her name by her direction, at her request, and in her presence; that the other witnesses attested the writing in the same room with the testatrix; and that she acknowledged it to be her will and testament. When asked as to the state of her mind, he answers he saw nothing amiss, and she dictated the disposition of her property, without the interference qr assistance pf any one. '
Testimony on the part of the heirs, against the testatrix’s q.apacity.
Elizabeth Readon, formerly Elizabeth Howard, another subscribing witness, in her deposition of the 5th day of March, 1827, taken upon commission, deposed, that Alsey Howard signed the will; that Col. Crockett, Samuel Howard, and herself, attested it in the room where the testatrix was lying; that when said Alsey made her mark to the will, her understanding was then as good as it was ip common, and “that she had common sense.?’
Against this testimony, the heirs at law, produce the witness, Samuel Howard, whose competency is objected to by the executrix; and his testimony was taken by the court subject to the question of competency. He declared that he believed himself interested in destroying the will; that he came for the purpose of doing it, and produced a paper duly executed and recorded from his father, who is one of the heirs at law of the said Alsey Howard, (that is to say her brother,) by which he gives to his said son, Samuel Howard, half the negroes then owned and possessed by his mother Sarah Howard, and half the negroes owned and possessed by his sister the said Alsey Howard, and the other half of the said negroes he gives by said instrument, to his said son Samuel, and his daughter Elizabeth; (who are the subscribing witnesses to the will,) declaring in the paper, that the estate intended, is his expectancy as heir to his mother and to his sister. The father, however, is to retain the use of the half, so given, jointly to his son .and daughter, during his life, and after his death, tp b.e divided as above. This deed of gift, bears date, August 24, 1816, and *201 la registered on the 21st October, 1816, in the State of Tenness.ee, where all the parties thereto, then and. now reside.
Samuel Howr ai'd’s depo^jtjon,
E. Roadon’s second dep§r sitjoi).
Discussion of the evidence,,
Samuel Howard deposed, that his impression is, -that after the testatrix made her mark, he went into an adjoining room, and attested the will, said Alice remaining in the other, and that she could not have seen him subscribe from her bed, through the door of the room. This witness heard the argument of counsel at the trial in Jessamine, when the will was rejected, in which the question as to the necessity of an attesfatiop ip tips presence of .the testator was inaxle.
Under the influence of communications made respecting this deed of gift, and others touching the questions which would he propounded, communicated tq the attesting witness Elizabeth, a few days before her second deposition was taken at the inT stance of the heirs at law, she, by her deposition of the 29th May, 1827, is inadé to answer, that she does not think she -witnessed the will jn the presence of Alsey Howard, and that she did not believe said Alsey to be of sound mind and memory, when she signed the will. Upon cross examination in tin? second deposition;, she, however, again says, she her jieved Alsey Howard to have common sense; that Col. Crockett wrote the will, in the room where said Alsey was; that said Alsey acknowledged it; that she the witness signed it also at that time, but whether at the moment of Alsey’s acknowledgment, or whether she signed it in the room where Alsey Howard was, or not, she cannot say; she acknowh .edges that she had heard of the deed of gift to her from her father, but had not seen it, and that her brother Samuel Howard, had, a few days before, pead to her the questions which had beep that day propounded to 'her, op behalf of the opposers of the will.
From the testimony of Col. Crockett, who is so far removed from all bias, and whose character is •so pure, and from the first deposition of Elizabeth Howard, now Readon, the fact may be considered established, that the attestation of hppself and ■ • ■ *202 of Col. Crockett, was in tlie same room where the testator was lying in her bed. Her second deposition, even under all the circumstances under which it was taken, dpes not contradict that fact; that she does not know where she signed, is all she will say, but says, that the will was written in the room where .Alsey was, she heard Alsey acknowledge, and saw her sign the will too, and there was ink in the room. For what then should Elizabeth go out of the room to subscribe and attest? Col. Crockett says the writing was all done in the same room where Alsey Howard was.
Held the will ivas duly executed.
An attestation in the same room with the testatrix, taken •to be in her presence.
'Persons of common .■jense are capable of making wills.
Sitting as Ave do, as triers of the law and the fact, upon an appeal from the county court, Ave cannot avoid finding the fact, that the Avill Avas duly subscribed by the testatrix, in the presence of all the witnesses, and attested by two of them, yes, by all three, in the same room where Alsey HoAvard the testatrix xvas. The competency or incompetency of Samuel Howard, is a question not worth adjudication, so far as it bears upon this controversy. The facts stated by him under the acknoAvledgecl bias of his mind, many of which are not, and need not be detailed, tend to confirm, not to weaken, the testimony of Col. Crockett, and that of Elizabeth, son clearly given in her first deposition.
That an attestation in the same room with the testatrix is a sufficient subscription in her presence, is well settled by adjudged cases. Sir George Sears’ case, cited and allowed in Eccleston vs. Petty and Speke, Carthew 81; Davy and Nicholls vs. Ann Smith, 3 Salk. 395; Shires vs. Glasscock, 2 Salk. 688; same case Equ. ca. ab. 403, pl. 8; and others.
2dly. As to the sanity of the testatrix, Col. Crock , ett proves she dictated the‘will; he saw nothing amiss; but had never conversed with her before or since. Elizabeth, another Avitness, proves she Avas in her usual state of mind, and she had common sense. But in her second deposition she says, she does not think her of sound mind and memory, but again says she had common sense. That a person of common sense, is not capable of making a testament, is a proposition which cannot be admitted. *203 The distinction between a person of sound'mind and one of common sense, is not perceived by the court.
Discussion of., the question of the capacity of the - testatrix.
Wills may be. established against the testimony of the subscribing ■witnesses, deposing against Iho testator's capacity*
*203 The whole force of the testimony adduced to. prove insanity,, rests upon the statements of Samuel, Howard and of Elizabeth, in her second deposition; That Alsey was deformed, that she Avas so from her. infancy, that OAving to bodily deformity and decrepitude, she never was sent to school, that she avoided the company of strangers, and had fits at, times, are facts. But that her mind was not deformed, nor her affections benumbed, nor her intel-. lect benighted, nor her reason sunk into chaos and confusion, are facts equally well attested. That she had common sense, that her intellect was of the ■common order of females, is well attested by many, who kneAv her, conversed Avith her and associated with her. She lived for very many. years before her death, and at her death, in the county 'of Jessamine; she died at the age of fifty-three, yet, strange to tell, her sanity is questioned, and only two witnesses, Samuel Howard and Elizabeth Readon, of Tennessee, are found to give color to want of intellect, Avhilsl those who knew her well and resided near her in Jessamine, male and female, all concur as to her sanity. Her consciousness of her deformity, and retreat from the approach of strangers, is •a proof of sanity; the testimony of Mrs. Pullen and Mrs. M’Grath, is full and clear as to her sanity; but no candid mind could hear the testimony of Mr. Taylor, and doubt. She informed him she bad made her will, that she had bequeathed her whole estate to her mother, because she had been from infancy Aveak and decrepid, and her mother, Avith great care and pains, had nursed her from infancy to old age. This is surely proof, strong and undoubted, of memory, of reason and of social affections and moral sense.
Upon the proof offered by the heirs at law to counteract the testament, and destroy the exention of it, coming as it does, solely from two of the subscribing witnesses, tinder the circumstances detailed, and at the distance of twenty years after *204 their attestation, it is proper. to remark, that sucílproof from the attesting witnesses, ought to be received with great jealously. In Hudson’s case, (Skinner 79, cited by Powell on devises, 708,) the will was proved, against the oath of two of the attesting witnesses, who would have destroyed its effect, by swearing that the testatrix did not publish it, and that another guided his hand. Yet upon the force of their signatures as witnesses,' and other circumstances, the will Was established* In Digges’ case (cited in Powell, on devises.* 710,) the person who wrote the will, and was an attesting witness, swore, that the testator ikas of sound mind; the two other witnesses, swore he was of unsound mind, but the verdict found the will a good testament. In Lowe vs. Jolliffe, (Blackst. Rep. 365,) the will was established, notwithstanding all the subscribing witnesses swore the testator was utterly incapable; to encounter this, other persons who were with the devisor on the day — two physicans who occasionally attended him, and several others, strongly deposed to the sanity of the testator. The jury brought in a verdict to establish the will. The testimony of the subscribing witnesses as to the state of the testator’s mind, at. the time they were called in to attest, is not uncontrolable, (Gilb. Rep. Eq. 264.) In Goodtitle, on the demise of Alexander vs. Clayton and others, (4 Burr. 225,) the witnesses who attested the will were called to give evidence against their own attestation. Other witnesses were called to support the will. The whole court expressed their* disapprobation of permitting witnesses to give evidence against the will, to which they acknowledged they had attested as subscribing witnesses. The court mentioned that there were several cases, both upon bonds and wills, where the attestation of witnesses had been supported by the evidence of other witnesses, against the attesting witnesses who denied their own attestations. Lord Mansfield declared, “it is of terrible consequence, that witnesses to wills should be tampered with, to deny their own 'hltestations.”
From the whole evidence, the court is satisfied that the testatrix was of sound mind) and that th& *205 •will offered for probate was published with the feolemnities required by the statuté.
J udgment for th.® T1,1’ & t0 b0 recorded,
tíaggin, .Crittenden, Barry and Loughborough, for appellant; Woodson and tleiiiU, for appellee.
It is, therefore, considered by the court, that the judgment of the county court be reversed, that the said last will and testament ot Aisey Howard, ueceased, be recorded in this court, and that the original be certified to the said county court of Jessamine, as having been fully proved in this court, and to be there recorded, and that they take such further order thereupon, as the law requires.
The appellant to recover his costs in this behalf expended.